**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **AMERICAN IODINE COMPANY, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL CASE NO. 4:20-CV-00582** |
| | § | |
| **COSAYACH EXPORTADORA SA,** | § | |
| **MITSUI CHEMICALS, INC.,** | § | |
| **MARUBENI CORPORATION, AND** | § | |
| **ECOFUSION INC.** | § | |
| | § | |
| *Defendant.* | § | |

**COSAYACH EXPORTADORA SA'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Cosayach Exportadora SA ("**Cosayach**") hereby moves to dismiss Plaintiff American Iodine Company's ("**AIC**") First Amended Complaint (Dkt. 7) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Cosayach is a Chilean mining company that produces iodine for export all over the world, including approximately 20-25 customers in the United States. Customers use the iodine produced by Cosayach in a variety of ways, including in products like x-ray contrast media, biocides, pharmaceutical compounds, LCD Optical Polarizing Films, Heat Stabilizers, Fluorine Derivates, Iodine for Human and Animal Nutrition, and iodine-based disinfectants. AIC was previously involved in the distribution of Cosayach's iodine to customers in the United States, primarily by organizing financing and logistics, but that distribution was not governed by a long-term agreement, nor did the parties have an exclusivity agreement.

Earlier this year, AIC refused to pay Cosayach for millions of dollars in iodine, obtained additional iodine from Cosayach through actionable misrepresentations, and transferred millions

1

of dollars in iodine earmarked for U.S. customers out of the country. AIC delivered part of the additional iodine to and accepted payment from the appropriate end users, but then, until recently, kept the proceeds from those sales, refusing to use them to pay Cosayach as agreed. Instead of delivering the remainder of the additional iodine to the intended U.S. customers, AIC shipped it out of the United States. As a result, the intended end users of Cosayach's iodine were put in jeopardy of having to halt their manufacturing processes and Cosayach and the end users were sent scrambling to find iodine available for immediate purchase in the United States.

AIC's failure to meet its payment and delivery obligations and misrepresentations forced Cosayach to stop doing business with AIC, and AIC's wrongdoing forced Cosayach to deal with other U.S. distributors.

Perhaps deciding that the best defense was a good offense, AIC filed this lawsuit.

## I.   SUMMARY OF ARGUMENT

On July 29, 2020, AIC filed a four-count Complaint[1] against Cosayach and three additional Defendants. On September 7, 2020, after being ordered by the Court to re-plead in light of its failure to sufficiently allege facts supporting this Court's jurisdiction, AIC filed its First Amended Complaint[2] (the "**Amended Complaint**") against Cosayach and two additional Defendants, Mitsui & Co. (U.S.A.), Inc. ("**Mitsui**") and Marubeni Corporation ("**Marubeni**"). AIC alleges breach of contract against Cosayach and tortious interference with existing contracts and with prospective relations and conspiracy against all Defendants. The crux of AIC's Amended Complaint and its claims is that Cosayach and AIC entered into an alleged oral agreement in 2006 pursuant to which AIC claims it was given the perpetual and exclusive right to sell iodine produced by Cosayach to Cosayach's North American customers (the "**Oral Agreement**"). AIC asserts that Cosayach

---

[1] Dkt. 1
[2] Dkt. 7

2

breached the alleged Oral Agreement in numerous ways, including by preventing AIC from selling iodine to some of its key customers,[3] refusing to ship additional quantities of iodine to AIC,[4] unilaterally appointing a new iodine distributor,[5] and soliciting or communicating with AIC customers,[6] employees,[7] and former employees.[8]

AIC also alleges that Cosayach used AIC's allegedly confidential customer and market information to "intimidate" AIC's customers, appoint new distributors, and supply the same product to AIC's customers via the new distributors.[9] Plaintiffs' tortious interference and conspiracy claims are based entirely on some of these same alleged breaches of the Oral Agreement. With respect to the other two Defendants, Cosayach alleges that they tortiously interfered with the Oral Agreement by distributing Cosayach's iodine in the United States.

Every one of AIC's claims in this case is premised on the alleged Oral Agreement between AIC and Cosayach. However, AIC has failed to plausibly allege facts that establish even the existence of an enforceable contract between the parties—let alone an everlasting and non-terminable exclusive distribution agreement. The Amended Complaint does not even set out the basic terms needed to form an agreement—conspicuously absent are both the price and term of the alleged Oral Agreement. While the Amended Complaint does set out some of the purported terms of the alleged Oral Agreement, it does so in a conclusory fashion wholly devoid of the factual allegations necessary to state a plausible claim.

Moreover, the alleged Oral Agreement would violate the Statue of Frauds and, as a result, be rendered unenforceable. Because AIC's Amended Complaint lacks facts sufficient to show the

---

[3] *Id.* at ¶ 15
[4] *Id.* at ¶ 17
[5] *Id.* at ¶ 20
[6] *Id.* at ¶¶ 22, 23, 24
[7] *Id.* at ¶ 21
[8] *Id.* at ¶ 23
[9] *Id.* at ¶ 19, 20

existence of the Oral Agreement, which would violate the statute of frauds even if sufficiently pleaded, AIC's breach of contract claim against Cosayach should be dismissed. Similarly, because AIC's claims for tortious interference with existing contracts and prospective relations and for conspiracy are premised entirely on alleged violations of the Oral Agreement, those claims should also be dismissed as to all Defendants. Because all of AIC's claims are premised on the Oral Agreement, which is unenforceable under the statute of frauds, any attempt to amend would be futile. Accordingly, the Court should deny leave to amend.

## II.     STATEMENT OF THE ISSUES

1. Is the Oral Agreement subject to the statute of frauds?

2. Has AIC pled facts sufficient to show an enforceable agreement exists?

3. Has AIC pled facts sufficient to support a claim for breach of contract?

4. Has AIC pled facts sufficient to support a claim for tortious interference with existing contractual relations?

5. Has AIC pled facts sufficient to support a claim for tortious interference with prospective business relations?

6. Has AIC pled facts sufficient to support a claim for conspiracy?

## III.    FACTUAL BACKGROUND

According to the allegations set forth in the Amended Complaint, the relationship between AIC and Cosayach began in 2006 when Cosayach chose to use AIC as its distributor of iodine in North America and the two parties entered into the Oral Agreement.[10] AIC alleges that it agreed to develop the North American market by enrolling new customers, building relations with key accounts, managing the local logistics of distribution, warehousing product for Cosayach and providing finance for working capital for Cosayach.[11] Further, AIC contends that Cosayach agreed

---

[10] *Id.* at. ¶ 10-12
[11] *Id.*

to support AIC on any quality, technical, compliance, and/or packaging needs of the customer(s)[12] and that AIC shared customer information with Cosayach in furtherance of the Oral Agreement.[13] AIC alleges that, pursuant to the Oral Agreement, Cosayach was meant to allocate 30% of its production for AIC to sell in the North American market.[14]

AIC alleges that Cosayach breached the Oral Agreement including by stopping supplies to AIC, unilaterally appointing a new distributor,[15] communicating and intimidating AIC's customers into terminating their use of AIC as a distributor in North America,[16] supplying product to customers without AIC's knowledge,[17] soliciting AIC customers,[18] and soliciting and communicating with former employees of AIC to gain confidential information about AIC's business and customers.[19] AIC also alleges that Cosayach used AIC's allegedly confidential customer and market information to "intimidate" AIC's customers, appoint new distributors, and supply the same product to AIC's customers via the new distributors—all claims that depend on the existence and enforceability of the Oral Agreement.[20] AIC also alleges that Defendants interfered with both its existing and prospective contracts,[21] and conspired to use AIC's confidential information in violation of the Oral Agreement to put AIC out of the iodine market and out of business.[22]

---

[12] *Id.*
[13] *Id.* at ¶ 13
[14] *Id.* at ¶ 14
[15] *Id.* at ¶¶ 17, 20
[16] *Id.* at ¶ 19
[17] *Id.* at ¶ 20
[18] *Id.* at ¶ 22
[19] *Id.* at ¶ 23
[20] *Id.* at ¶ 19, 20
[21] *Id.* at ¶¶ 32-42
[22] *Id.* at ¶ 44

## IV.    <u>LEGAL STANDARD</u>

Fed. R. Civ. P. 12(b)(6) allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) challenge, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the "complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotations omitted).

Rule 8's standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. at 558 (quoting 5 Wright & Miller, Federal Practice and Procedure § 1216, at 234).

Although leave to amend should generally be "freely given" to correct a defective complaint, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), it is within the district court's discretion to deny leave to amend because an amendment would be futile. *Little v. SKF Sverige AB*, 594 Fed. Appx. 810, 813 (5th Cir. 2014); *see also DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968) ("The liberal amendment rules of Fed. R. Civ. P. 15(a) do not require that courts indulge in futile gestures.").

## V.   ARGUMENT AND AUTHORITIES

### A.   AIC'S Breach of Contract Claim Fails Because AIC has not Alleged the Existence of an Enforceable Contract

To adequately plead a breach-of-contract claim, AIC must set forth facts that, taken as true, plausibly allege: (1) the existence of a valid contract; (2) performance or tendered performance by AIC; (3) Cosayach breached the contract; and (4) AIC sustained damages as a result of the breach. *Permian Power Tong, Inc. v. Diamondback E&P, LLC*, 550 S.W.3d 642, 650 (Tex. App.—Tyler 2017), judgment set aside, opinion not vacated, 12-16-00092-CV, 2017 WL 2824311 (Tex. App.—Tyler June 30, 2017, no pet.). It has not done so here for the following reasons.

#### 1.   AIC failed to plead facts sufficient to show the alleged Oral Agreement is a binding contract.

AIC's complaint must be dismissed because each of its causes of action assumes the existence of a binding contract, something which it has failed to adequately plead. "A binding contract must have an offer and an acceptance, and the offer must be accepted in strict compliance with its terms. The parties must have a meeting of the minds, and each must communicate his consent to the terms of the agreement." *Angeles v. Brownsville Valley Reg'l Med. Ctr., Inc.*, 960 S.W.2d 854, 859 (Tex. App.—Corpus Christi 1997, pet. denied). As explained below, AIC's live Complaint does not sufficiently allege these elements.

##### a.   AIC alleges no facts that that support the existence of a meeting of the minds with respect to the terms of the alleged Oral Agreement.

A "meeting of the minds" means that the parties have a mutual understanding of an assent to the subject matter and essential terms of a contract. *2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 449 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). A promise or term is an essential and material part of an agreement if, at the time of contracting, the parties would reasonably regard it as a vitally important element of the bargain. *Fischer v. CTMI, L.L.C.*,

7

479 S.W.3d 231, 237 (Tex. 2016). The omission or indefiniteness of an essential and material term makes the contract unenforceable. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218. 221-22 (Tex. 1992).

AIC has not pled any relevant facts around the alleged formation of the contract—and instead only levied the unsupported, conclusory, and insufficient accusation that it existed and it was breached. AIC has not pled facts sufficient to support its allegation that an agreement existed between the parties, let alone the terms of that agreement. It has not pled facts sufficient to show a meeting of the minds as to any of the essential terms of the alleged Oral Agreement including each party's obligations with respect to price, payment, or duration.

b.  AIC failed to plead facts sufficient to establish that Cosayach was prohibited from terminating the Oral Agreement.

AIC alleges Cosayach violated the Oral Agreement by stopping the supply of iodine to AIC and appointing a new distributor.[23] However, AIC fails to plead facts sufficient to allege that Oral Agreement had any agreed duration. Duration is a material term. *Tonkin v. Amador*, 01-07-00496-CV, 2009 WL 1424724, at *3 (Tex. App.—Houston [1st Dist.] May 21, 2009, no pet.) (mem. op.) (quoting *Material Terms*, Black's Law Dictionary (8th ed. 2004)).

Further, it is well established that contracts which contemplate a series of performances over time, like the alleged order-by-order distribution contract at issue, and which are indefinite in duration, can be terminated at the will of either party for any reason or no reason. *Clear Lake City Water Auth. v. Clear Lake Utilities Co.*, 549 S.W.2d 385, 390 (Tex. 1977). Perpetual contracts are disfavored; thus, they are presumed to be terminable at will. *See Trient Partners I Ltd. v. Blockbuster Entm't Corp.*, 83 F.3d 704, 708 (5th Cir. 1996). Consequently, even accepting as true Plaintiff's allegations, Cosayach was free to terminate the alleged Oral Agreement by conduct or

---

[23] *Id*. at ¶ 17, 20. Plaintiff also alleges that "Cosayach did not terminated (sic) the [Oral] Agreement." *See id.* ¶ 18.

otherwise and without notice because any agreement that existed between the parties was terminable at will.

          c.   <u>AIC failed to plead facts sufficient to establish that the Oral Agreement was exclusive.</u>

AIC alleged Cosayach violated the Oral Agreement by appointing a new North American distributor, but failed to plead facts sufficient to establish that exclusivity was even a requirement of the alleged Oral Agreement.[24] More specifically, AIC has not pled facts sufficient to show the parties had a meeting of the minds regarding the exclusivity of the Oral Agreement.

        **2.**   **The alleged Oral Agreement would be unenforceable pursuant to the Statute of Frauds.**

Even if AIC has pled facts sufficient to support that the parties entered into the Oral Agreement, its claims still fail because AIC does not plead the existence of a writing, signed by Cosayach evidencing the terms of the alleged contract.

The Uniform Commercial Code's ("UCC") Statute of Frauds, as enacted into the Texas Business and Commerce Code, applies to an agreement for the sale of goods worth $500 or more. Such a contract is not enforceable unless it is in writing and signed by the party against whom enforcement is sought. Tex. Bus. & Com. Code Ann. § 2.201 ("Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.").

The alleged Oral Agreement, as pleaded, concerns the sale of goods. *See Cont'l Casing Corp. v. Siderca Corp.*, 38 S.W.3d 782, 788 (Tex. App.—Houston [14th Dist.] 2001, no pet.)

---

[24] Pl.'s Am. Compl. ¶¶ 17, 20, 24.

("[T]he overwhelming majority of jurisdictions that have considered [whether a distributorship agreement is a 'contract for the sale of goods' under the UCC] have concluded that distributorship agreements are subject to the UCC."). Although Plaintiff does not plead a value of the alleged Oral Agreement, it is obvious from context that the value is far in excess of $500. In any event, AIC asserts its damages, which it alleges all arise in some way out of the breach of the Oral Agreement, are in excess of the $75,000 jurisdictional minimum.[25]

In addition, the general Texas Statute of Frauds requires a signed writing that evidences any contract "which is not to be performed within one year from the date of making the agreement." Tex. Bus. & Com. Code § 26.01(b)(6). While AIC does not allege the term of the Oral Agreement, Plaintiff's allegation that the 2006 agreement was breached in 2020 implies a term of at least 14 years. Accordingly, the alleged Oral Agreement would also violate the Statue of Frauds by virtue of its duration.

Thus, as pleaded, the alleged Oral Agreement is subject to the Statute of Frauds. Accordingly, to plausibly plead a breach of the Oral Agreement, AIC must have pleaded facts that establish the existence of a writing documenting the terms of the Oral Agreement, which was signed by Cosayach.[26] It has failed to do so. Because all of Plaintiff's claims rely on the enforceability of the Oral Agreement, Plaintiff has failed to plead claims that are plausible on their face. *See Twombly*, 550 U.S. at 570.

---

[25] Pl.'s Am. Compl.¶ 30, 36.
[26] The statute of frauds is an affirmative defense. Tex. R. Civ. P. 94. A court may dismiss a breach of contract claim under Texas law for failure to state a claim where an affirmative defense is clear on the face of the pleadings. *Turnbow v. PNC Mortg.*, 4:12-CV-2835, 2013 WL 5410075, at *4 (S.D. Tex. Sept. 25, 2013) (granting dismissal of a breach of contract claim where the contract failed to satisfy the statute of frauds.).

### B.  Breach of Contract—Even if an Enforceable Agreement Exists, AIC Failed to Plead Facts Sufficient to Show Performance

AIC failed to plead facts sufficient to support that *it* performed or tendered performance under the Oral Agreement. A breach of contract claim fails when a party fails to perform or tender performance under the terms of an agreement. *See, e.g., Wilson v. Kennard*, 05-91-01718-CV, 1992 WL 238580, at *2 (Tex. App.—Dallas Sept. 25, 1992, no writ) (reversing a grant of summary judgment where the record established that the plaintiff failed to establish tender of performance or allege that the plaintiff was ready, willing, and able to comply with the contract).

Plaintiff has not, and cannot, assert that it has complied with its obligation to pay Cosayach for the product it has received. To the contrary, Plaintiff implicitly concedes that it has not paid Cosayach, stating, "Plaintiff has ***previously*** paid Cosayach timely without any default for all the iodine purchased from Cosayach. However, during to the Covid19 pandemic Cosayach has taken advantage of this economic situation . . ."[27] and "[m]anagement of Plaintiff has also been threatened several times by Cosayach, including that if Plaintiff does not pay alleged outstanding invoices to Cosayach. [sic]"[28] This allegation not only lacks any factual detail as to how Cosayach has "taken advantage of" AIC, but also lacks factual detail as to why Cosayach's actions were a violation of the Oral Agreement. Given the lack of specificity, Cosayach is left to assume, through vague pleadings and its knowledge of the parties' prior dealings, that AIC is alleging they were no longer able to pay Cosayach because of the economic effect of the COVID-19 pandemic. If true, AIC is admitting to its own breach of the Oral Agreement.

Lastly, AIC states that it suffered damages as a result of Cosayach's alleged violations of the Oral Agreement, and that it is entitled to exemplary damages because its injury resulted from

---

[27] Pl.'s Am. Compl. ¶ 17 (emphasis added)
[28] *Id.* ¶ 23.

Cosayach's willful and/or malicious conduct (although no factual details to this end are provided).[29] However, in an action for breach of contract, a plaintiff cannot recover exemplary damages even if the contract is breached intentionally or maliciously. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).

For these reasons, AIC's breach-of-contract claim should be dismissed.

1. **If AIC pleaded facts sufficient to support a breach of contract claim, Cosayach is excused from performing its obligations under the alleged Oral Agreement because AIC materially breached first.**

AIC's failure to meet its payment obligations under the Oral Agreement, which AIC appears to concede[30], discharged Cosayach of the duty to continue to use AIC as a distributor. And, in fact, it was this breach, among others, by AIC that triggered Cosayach to find a new North American distributor. That fact is fatal to AIC's claims here because, "[u]nder Texas law, the first material breach of a contract by one party discharges the duty of further performance by the other party." *Phoenix Aero Aviation Eng'g, Ltd. v. Trace Engines, L.P.*, MO-11-CV-007, 2013 WL 12302980, at *4 (W.D. Tex. Jan. 4, 2013).

C. **If an Enforceable Agreement Exists, AIC Failed to Plead Facts Sufficient to Support a Claim for Tortious Interference with Existing Contracts.**

AIC alleges Cosayach interfered with the Oral Agreement and AIC's client relationships.[31] To establish a claim for tortious interference with an existing contract, AIC must show: (1) AIC had a valid contract; (2) Cosayach willfully and intentionally interfered with the contract; (3) the interference proximately caused AIC's injury; and (4) AIC incurred actual damage or loss. *Community Health Sys. Prof'l Servs v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).

---

[29] *Id.* ¶ 31.
[30] *See* Pl.'s Am. Compl. ¶ 17 (alleging that AIC has "previously paid Cosayach timely without any default," but that Cosayach has "taken advantage of [the] economic situation . . . by stopping supplies to Plaintiff, and unilaterally appointing a new distributor, in violation of the Oral Agreement.")
[31] Pl.'s Am. Compl. ¶ 36.

First, Cosayach cannot interfere with a contract **to which it is a party**. *Id.*; *In re Vesta Ins. Group*, 192 S.W.3d 759, 761 (Tex. 2006) (defendant must "be a stranger" to the contract; defendant cannot interfere with its own contract). Therefore, AIC's claim for tortious interference with the Oral Agreement fails.

Second, for the reasons detailed above, AIC cannot establish that it had a valid contract (i.e., an exclusive distribution agreement with Cosayach which Cosayach could never terminate, not even in the face of a material breach by AIC). As explained above, all of AIC's allegations that form the basis of its tortious-interference claim are tied to the alleged Oral Agreement. If the Oral Agreement is not valid and enforceable—which it is not—then all of AIC's tort claims against all Defendants fail.

Third, AIC has failed to plead sufficient facts to establish that valid contracts with third parties existed. AIC concludes that Cosayach and the other named Defendants used AIC's "confidential customer data and market intelligence to . . . usurp Plaintiff's business . . . tortuously [sic] interfering with [AIC]'s client relationship and customer contracts."[32] Yet it failed to plead facts to support this conclusion or any other conclusion in the Amended Complaint accusing Cosayach of interfering with AIC's client relationships. AIC also failed to plead any alleged acts of interference.

Fourth, AIC has failed to plead facts that, if true, show that Cosayach willfully and intentionally interfered with AIC's client contracts. To establish this claim, AIC must show that Cosayach had the intent *to interfere* with AIC's contracts, not just an intent to do the particular acts AIC accuses Cosayach of doing. *See Southwestern Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992) (defendant must intend interference as a consequence of its actions).

---

[32] Pl.'s Am. Compl. ¶ 35.

AIC accuses Cosayach and the other named Defendants of conspiring to use "confidential customer data and market intelligence" to contact AIC's customers.[33] So, AIC was required to plead facts sufficient to plausibly show that Cosayach contacted AIC customers with the intention to interfere with their contracts with AIC. The requirement is *not* to plead facts showing that Cosayach intended *to contact* AIC customers, which is what AIC has done in the Amended Complaint. AIC fails to allege that Cosayach intended to interfere with its client relationships, much less allege facts that, if true, support such a conclusion.

Fifth, AIC has failed to show that any interference caused it actual damage or loss. Instead, AIC merely concludes that Cosayach's interference with AIC's client relationships caused its damages without any factual support for such a conclusion.

For these reasons, AIC's tortious interference claim against Cosayach should be dismissed, and its claim against the other Defendants necessarily fails for the same reasons.

### D. If an Enforceable Agreement Exists, AIC Failed to Plead Facts Sufficient to Support a Claim for Tortious Interference with Prospective Relations.

AIC alleges the Defendants interfered with AIC's continued and future business relationships, and with the relationship between AIC and Cosayach.[34] To establish a claim for tortious interference with prospective relations, AIC must show: (1) there was a reasonable probability that AIC would have entered into a business relationship with a third person; (2) Cosayach intentionally interfered with the relationship; (3) Cosayach's conduct was *independently* tortious or unlawful; (4) the interference proximately caused AIC's injury; and (5) AIC suffered actual damage or loss. *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Further, AIC must establish that it had: (1) a business relationship that had

---

[33] Pl.'s Am. Compl. ¶ 35.
[34] *Id*. at ¶¶ 39, 40.

not yet been reduced to a contract or (2) a continuing business relationship that was not formalized by a written contract. *Heil-Quaker Corp v. Mischer Corp*, 863 S.W.2d, 210, 214 (Tex. App.— Houston [14th Dist.] 1993), *writ granted w.r.m*, 877 S.W.2d 300 (Tex. 1994).

First, AIC alleges that Cosayach interfered with the Oral Agreement. But Cosayach cannot do so as a matter of law. *See Hansen*, 525 S.W.3d at 689; *In re Vesta*, 192 S.W.3d at 761 (defendant must "be a stranger" to the contract; defendant cannot interfere with its own contract).

Second, AIC wholly fails to allege that Cosayach interfered with a prospective business relationship that had not yet been reduced to writing. In fact, it alleges the opposite: that Defendants (including Cosayach) interfered with the relationship between AIC and Cosayach and AIC's clients.[35] At no point in the Amended Complaint does AIC allege interference with a business relationship with any entity other than its current customers. Moreover, AIC makes only a conclusory allegation that there was a reasonable probability that it would have entered into continued and future business relationships with its client,[36] but provides no facts in support of that claim.

Third, AIC must establish that Cosayach's conduct is actionable under a recognized tort. *Wal-Mart Stores v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) ("[A] plaintiff must prove that the defendant's conduct was independently tortious or wrongful. [That is] plaintiff must prove that the defendant's conduct would be actionable under a recognized tort."). AIC has not alleged any facts to establish Cosayach has engaged in independently tortious conduct.

Fourth, as with its tortious-interference claim, here AIC has failed to plead facts that, if true, show that Cosayach willfully and intentionally interfered with AIC's prospective client relationships. To establish this claim, AIC must show that Cosayach had the intent *to interfere*

---

[35] *See* Pl.'s Am. Compl. ¶ 40.
[36] *See* Pl.'s Am. Compl. § 39

with AIC's contracts, not just an intent to do the particular acts AIC accuses Cosayach of doing. *See Southwestern Bell Tel. Co.*, 843 S.W.2d at 472 (defendant must intend interference as a consequence of its actions). Thus, AIC was required to plead facts sufficient to plausibly show that Cosayach contacted AIC's prospective customers with the intention to interfere with their contracts with AIC. The requirement is *not* to plead facts showing that Cosayach intended *to contact* AIC's prospective customers, which is what AIC has done in the Amended Complaint. AIC fails to allege that Cosayach intended to interfere with its client relationships, much less allege facts that, if true, support such a conclusion.

Fifth, AIC has failed to show that any interference caused it actual damage or loss. Instead, AIC merely concludes that Cosayach's interference with AIC's client relationships caused its damages without any factual support for such a conclusion.

For these reasons, AIC's claim for tortious interference with existing contracts against Cosayach should be dismissed, and its claim against the other Defendants necessarily fails for the same reasons.

### E.   If an Enforceable Agreement Exists, AIC Failed to Plead Facts Sufficient to Establish a Claim for Conspiracy.

AIC alleges that the Defendants conspired to use AIC's confidential information to put AIC out of business in violation of the Oral Agreement.[37] To establish a claim for conspiracy, AIC must prove: (1) defendant was a member of a combination of two or more persons; (2) the object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) the members had a meeting of the minds on the object or course of action; (4) one of the members committed an unlawful, overt act to further the object or course of action; and (5) AIC

---

[37] Pl.'s Am. Compl. ¶ 44.

suffered injury as a proximate result of the wrongful act. *First United Pentecostal Ch. v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017).

AIC alleges that the goal of the conspiracy was to violate the Oral Agreement with attendant consequences of harming AIC. For reasons detailed above, AIC cannot establish that AIC and Cosayach had a valid contract. Thus, AIC's claim fails as a matter of law.

Second, as part of establishing the elements of conspiracy, AIC must show that at least one of the named Defendants was liable for an underlying intentional tort. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Because the tort claims are based on the Oral Agreement, for the reasons explained above, AIC has not alleged—*and cannot allege*—any facts that Cosayach, or any other named Defendant, has engaged in actionable tortious conduct.[38]

Third, AIC has failed to show that any interference caused it actual damage or loss. Instead, AIC merely concludes that Cosayach's interference with AIC's client relationships caused its damages without any factual support for such a conclusion.

Fourth, conspiracy requires a meeting of the minds on the course or object of the action. *First United Pentecostal Ch.*, 514 S.W.3d at 222. AIC has failed to plead facts that, if true, would demonstrate a meeting of the minds.

Finally, AIC has pleaded that Mitsui and Marubeni are agents of Cosayach.[39] Under Texas law, a principal cannot conspire with its agents. *See, e.g.*, *Bradford v. Vento*, 48 S.W.3d 749, 761 (Tex. 2001).

For these reasons, AIC's claim for conspiracy should be dismissed, and its claim against the other Defendants necessarily fails for the same reasons.

---

[38] Breach of contract is not a tort, and thus cannot be a basis of a conspiracy claim. *Grizzle v. Texas Commerce Bank*, 38 S.W.3d 265, 285 (Tex. App.—Dallas 2001), *rev'd in part on other grounds*, 96 S.W.3d 250 (Tex. 2002).
[39] Pl.'s Am. Compl. ¶ 44

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Cosayach respectfully requests that the Court dismiss all claims asserted against it with prejudice to the same. For the same reasons, any attempt by AIC to amend would be futile. Accordingly, the Court should deny leave to amend. Cosayach also requests all further relief to which it may be justly entitled, including attorneys' fees and court costs.

Dated: September 21, 2020                    Respectfully submitted,

                              By: */s/ Allissa A.R. Pollard*
                              Allissa A.R. Pollard
                              Texas Bar No. 24065915
                              allissa.pollard@dlapiper.com
                              Mark A. Waite
                              Texas Bar No. 00791865
                              Mark.waite@dlapiper.com
                              Samantha Craig
                              Texas Bar No. 24103743
                              Samantha.craig@dlapiper.com
                              **DLA PIPER LLP (US)**
                              1000 Louisiana St., Suite 2800
                              Houston, TX 77002
                              Telephone: (713) 425-8400
                              Facsimile: (713) 425-8401

                              **ATTORNEYS FOR DEFENDANT
                              COSAYACH EXPORTADORA SA**

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing document on all counsel of record on September 21, 2020 via the court's CM/ECF system.

                              */s/ Allissa A.R. Pollard*
                              Allissa A.R. Pollard